UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOLAR CITY, INC.,

    Plaintiff,

v.                          Case No. 8:19-cv-2538-T-33TGW

CRYSTAL CLEAR CONCEPTS, LLC,
and AUSTIN FORD,

    Defendants.

CRYSTAL CLEAR CONCEPTS, LLC,

    Counterclaim-Plaintiff,

v.

SOLAR CITY, INC., and
THE INDEPENDENT SAVINGS
PLAN COMPANY,

    Counterclaim-Defendants.
_____/

## ORDER

This matter comes before the Court upon consideration of Counterclaim-Defendant The Independent Savings Plan Company's Motion to Dismiss Claims (Doc. # 32), filed on November 26, 2019. Counterclaim-Plaintiff Crystal Clear Concepts, LLC responded in opposition on December 20, 2019. (Doc. # 43). With the Court's permission, Independent Savings filed a

1

reply on January 8, 2020. (Doc. # 48). For the reasons that follow, the Motion is denied.

I. **Background**

Solar City initiated this action against Crystal Clear and Defendant Austin Ford in state court on September 15, 2019, asserting claims for breach of contract, breach of guaranty, account stated, and quantum meruit. (Doc. # 1-1). The case was removed to this Court on the basis of diversity jurisdiction on October 14, 2019. (Doc. # 1). Crystal Clear filed its answer and counterclaim against Solar City and Independent Savings on October 30, 2019. (Doc. # 15).

According to the counterclaim, Solar City "produces Westinghouse® brand water treatment systems referred to as the 'Dynamic' and/or 'Reliance' models and distributes a full line of water treatment equipment for treating water quality challenges experienced by homeowners and sells its products throughout the United States through a network of authorized dealers." (Id. at 7). Independent Savings "provides consumer financing to homeowners for a variety of home improvement products and equipment, including but not limited to home water treatment systems." (Id.).

Independent Savings and Solar City "are affiliated entities that share common ownership and management." (Id. at

8). For example, "Robert W. Schabes is a director and officer of both entities." (Id.). Solar City "offers consumer financing in connection with the sales of its products and systems exclusively through" Independent Savings and Independent Savings "provides consumer financing exclusively to customers of [Solar City] authorized dealers." (Id.).

Crystal Clear sells "water purification and filtration systems to homeowners in the Dallas-Fort Worth, Texas metro area." (Id.). "On March 24, 2015, Crystal Clear completed and submitted a 'Dealer Application' in an effort to become an authorized [Solar City] dealer" and eventually became an authorized Solar City dealer in August 2015. (Id. at 8-9).

"In connection with and further to the dealer relationship between Crystal Clear and [Solar City], Crystal Clear as of August 13, 2015, entered into a Merchant Agreement with" Independent Savings. (Id. at 10). "Under the Merchant Agreement, [Independent Savings] would provide consumer financing mechanisms only to purchasers of [Solar City] products sold by Crystal Clear under the Dealer Agreement." (Id. at 11). "As of December 19, 2017, Crystal Clear and [Independent Savings] entered into a Turn-Down Program Addendum to Merchant Agreement (the 'TD Addendum')," which is a supplement to and is subordinate to the Merchant Agreement.

3

(Id.). "The TD Addendum was intended to provide financing 'to qualifying high credit risk applicants who otherwise may not qualify for financing under [Independent Savings'] usual and customary underwriting and credit acceptance criteria . . . .'" (Id. at 12).

The TD Addendum provided that, in the event that a customer defaulted, Independent Savings could delegate to Crystal Clear the authority to repossess the equipment. (Id.). Crystal Clear would have to accept this delegation, repossess the equipment from the customer, and inform Independent Savings of the repossession. (Id.). Independent Savings would then accept the equipment in full satisfaction of the debt. (Id.). "The TD Addendum also gave [Independent Savings] the option to sell the repossessed equipment to Crystal Clear for re-sale to another customer." (Id.). Alternatively, if Crystal Clear did not perform its repossession responsibilities properly, Independent Savings held a "charge-back" right under the TD Addendum against Crystal Clear. (Id.).

Crystal Clear, Solar City, and Independent Savings worked together smoothly under these agreement for years. (Id. at 11).

In early 2018, the current owner of Crystal Clear, Michael Bodnar, owned another company called Galt Strategies, LLC. (Id. at 13). Galt proposed a sales and marketing platform for home water purification systems, called "Growth Potential Program" or "GPP," to Solar City and Independent Savings. (Id.). "Galt and [Solar City] entered into the GPP Acquisition Agreement dated May 31, 2018" under which Solar City "agreed to pay Galt a total purchase price of $2,000,000." (Id.). Solar City paid Galt $1,000,000 and eventually entered into an Amended and Restated GPP Acquisition Agreement in September 2018. (Id.).

Within weeks, the relationship between Galt and Solar City deteriorated, with Solar City accusing Galt of fraud and other improper conduct in connection with the GPP transaction. (Id. at 14). "On or about March 18, 2019, [Solar City] and Galt executed a Termination and Release Agreement effective as of January 23, 2019 [] releasing each other and [Solar City]'s dealers from their respective obligations in connection with the GPP Agreement [and] the Amended GPP Agreement." (Id.). Galt kept the $1,000,000 it was paid under the GPP Agreement. (Id.). But the termination of the GPP Agreement with Galt did not affect the various agreements

5

between Crystal Clear, Solar City, and Independent Savings. (Id.).

Crystal Clear alleges that Solar City and Independent Savings "engaged in a conspiracy to damage and destroy Crystal Clear's business" in retaliation for the failed GPP transaction. (Id. at 22). Soon after the GPP transaction was terminated, "Crystal Clear began to experience an unusually high rate of customer complaints concerning the [Solar City] products being sold and installed by Crystal Clear." (Id. at 14). "This was further evidenced by a dramatic and otherwise inexplicable increase in the number of service calls received by Crystal Clear." (Id.). As a result of these quality issues and negative reviews, Crystal Clear's business suffered dramatically. (Id. at 15).

"Because Crystal Clear determined that the equipment shipped by [Solar City] in April and May [2019] was either defectively manufactured or intentionally and maliciously altered to cause harm to Crystal Clear in its business, it refused to pay the invoices for said equipment." (Id. at 16). According to Crystal Clear, Solar City knowingly supplied Crystal Clear with defective or maliciously altered products so that customers would provide negative reviews and

prospective customers would not give Crystal Clear their business. (Id. at 22-23).

Crystal Clear also alleges Independent Savings retaliated against Crystal Clear by "willfully and intentionally fail[ing] to pursue collection of TD accounts with the same degree of effort that it pursued other accounts, all in an effort to drive up the TD default rate and increase the charge-backs to Crystal Clear." (Id. at 16). Additionally, Independent Savings "began to issue[] charge-backs to Crystal Clear even in cases in which Crystal Clear had not failed to repossess the collateral on behalf of [Independent Savings] or in which [Independent Savings] refused to delegate to Crystal Clear the authority to repossess." (Id.).

"When Crystal Clear challenged [Independent Savings] on this practice as being contrary to the terms of the TD Addendum, [Independent Savings] threatened to sue Crystal Clear, to cut off it funding source for new transactions, and to have [Solar City], its sister entity, refuse to supply equipment to Crystal Clear." (Id.). On July 9, 2019, Solar City terminated the Dealer Agreement with Crystal Clear. (Id. at 17).

7

According to the counterclaim, "[b]ecause of the relationship between the water treatment system equipment furnished by [Solar City] for sale to Crystal Clear's customers and the financing of those systems provided by [Independent Savings], [Solar City] and [Independent Savings] enjoyed and exercised a peculiar power of coercion over Crystal Clear." (Id. at 23). "This was evidenced by, among other things, [Independent Savings] threatening to have [Solar City] cut off sales of equipment to Crystal Clear." (Id.).

Crystal Clear's counterclaim asserts eight counts: (1) breach of dealer agreement against Solar City; (2) breach of implied covenant of good faith and fair dealing by Solar City; (3) breach of implied warranty of merchantability by Solar City; (4) intentional interference with business relationship by Solar City; (5) unfair and deceptive trade practices by Solar City; (6) civil conspiracy by Solar City and Independent Savings; (7) breach of Merchant Agreement and TD Addendum by Independent Savings; and (8) breach of implied covenant of good faith and fair dealing by Independent Savings. (Id. at 17-25).

Independent Savings moves for dismissal of the three counterclaims against it. (Doc. # 32). Crystal Clear has

responded (Doc. # 43), and Independent Savings has replied. (Doc. # 48). The Motion is ripe for review.

**II. Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004); see also Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001)("A motion to dismiss a counterclaim under Rule 12(b)(6) is treated the same as a motion to dismiss a complaint."). Further, the Court favors the counterclaim plaintiff with all reasonable inferences from the allegations in the counterclaim. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the counterclaim, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

### A. Civil Conspiracy

First, Independent Savings moves to dismiss Count VI — the civil conspiracy claim against it and Solar City. (Doc. # 32 at 5-7). "To state a claim for civil conspiracy under Florida law, a plaintiff must allege: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" Corbett v. Transp. Sec. Admin., 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012)(quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1271 (11th Cir. 2009)), aff'd, 568 F. App'x 690 (11th Cir. 2014).

"[O]rdinarily there can be no independent tort for conspiracy. However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not

possess, then conspiracy itself becomes an independent tort." Churruca v. Miami Jai-Alai, Inc., 353 So. 2d 547, 550 (Fla. 1977). "The essential elements of this tort are a malicious motive and coercion through numbers or economic influence." Id.

Unless a civil conspiracy claim is based on fraud, such claim is not required to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067–68 (11th Cir. 2007)("The insurers' civil conspiracy claims also fail to comport with the standards of Rule 9(b). As the district court noted, where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity."). As Crystal Clear's counterclaim does not contain allegations of fraud, it is subject only to the pleading requirements of Rule 8. See Okeda de Mexico, S.A. de C.V. v. Heras, No. 04-23168-CIV, 2005 WL 8155961, at *3 (S.D. Fla. May 5, 2005)("Contrary to defendants' assertion, the pleading standard for a civil conspiracy claim is the low 'notice' standard set forth in Federal Rule of Civil Procedure 8(a) and, hence, the claim need not be pled with particularity. Of course, if the civil wrong alleged is

fraud, then the facts constituting fraud must meet the requirements of Federal Rule of Civil Procedure 9(b).").

Nevertheless, according to Independent Savings, the pleading standard applicable to the civil conspiracy counterclaim is that announced by Florida state courts regarding such claims: "A complaint must 'set forth clear, positive, and specific allegations of civil conspiracy.'" Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc., 79 So. 3d 855, 863 (Fla. 4th DCA 2012)(citation omitted). And Independent Savings argues that the Court should dismiss the civil conspiracy claim because Crystal Clear has not "set forth any positive, clear, and specific allegations to show a peculiar power of coercion by [Independent Savings] and [Solar City], or the essential elements of malicious motive or coercion through economic influence or numbers." (Doc. # 32 at 6).

The Court disagrees with Independent Savings. Even assuming for the sake of argument that the pleading requirement announced by Florida state courts for civil conspiracy claims applied here and was indeed more stringent than the usual Rule 8 standard, the Court's ruling would be the same. The Court finds that Crystal Clear has sufficiently alleged a civil conspiracy claim at the motion to dismiss

stage. Taking the counterclaim's allegations as true and drawing all reasonable inferences in Crystal Clear's favor, Crystal Clear has alleged that Independent Savings and Solar City, which are related entities, conspired to maliciously target Crystal Clear for retaliation. (Doc. # 15 at 13-17).

Soon after the failed GPP transaction that cost Solar City one million dollars, the quality of Solar City products provided to Crystal Clear plummeted. (Id. at 14). And Independent Savings began issuing improper charge-backs and "willfully and intentionally" failed to pursue collection efforts for delinquent accounts as retaliation for the actions of Galt, which has the same owner as Crystal Clear. (Id. at 16). When Crystal Clear complained about the improper charge-backs, Independent Savings allegedly threatened "to cut off it funding source for new transactions, and to have [Solar City], its sister entity, refuse to supply equipment to Crystal Clear." (Id.).

In short, Crystal Clear has alleged that Independent Savings and Solar City combined their influence over Crystal Clear in an attempt to destroy Crystal Clear's business. Crystal Clear has alleged more than mere parallel conduct on the part of Solar City and Independent Savings. See Alhassid v. Bank of Am., N.A., 60 F. Supp. 3d 1302, 1319 (S.D. Fla.

13

2014)("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." (quoting Twombly, 550 U.S. at 556)). Indeed, the allegation that Independent Savings threatened to have Solar City cut off its supply of products to Crystal Clear raises the reasonable inference that these related entities conspired to harm Crystal Clear.

As Crystal Clear wrote in its response, "[i]t is the combined economic influence of [Independent Savings] and [Solar City] acting in concert, as related entities under common ownership, with the shared goal of retaliating against Crystal Clear, that makes an actionable conspiracy." (Doc. # 43 at 12). The Court agrees that Independent Savings and Solar City's relationship and control over both the financing available to Crystal Clear and the products available for Crystal Clear to sell plausibly supports a claim that Independent Savings and Solar City coerced Crystal Clear through their combined economic influence.

Therefore, the Court denies the Motion to the extent is seeks dismissal of the civil conspiracy claim.

### B. Breach of Merchant Agreement and Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Independent Savings argues that the counterclaims asserted solely against it — for breach of the Merchant

Agreement and breach of the implied covenant of good faith and fair dealing — should be dismissed as procedurally improper. (Doc. # 32 at 7). Independent Savings argues that Rule 13, governing counterclaims, only "permits the assertion of a counterclaim against an opposing party, such as [Solar City], a named party in this action, or an assignee or other party in privity," which does not include Independent Savings. (Id. at 8); see also Fed. R. Civ. P. 13(a)&(b) (permitting compulsory and permissive counterclaims "against an opposing party"). While the parties agree that Rule 13 also "permits assertion of a counterclaim against a named party jointly with another party not named in the original action," Independent Savings maintains that "a counterclaimant may not assert a counterclaim solely against an unnamed party." (Doc. # 32 at 8).

The Eleventh Circuit has not spoken on the question of whether a counterclaim — that is, a cause of action, rather than a pleading as a whole — can be asserted solely against a third-party if there is also another counterclaim asserted jointly against that third-party and an original party to the action. And, indeed, district courts across the country have disagreed on this question. As Independent Savings notes, some courts have held that counterclaims asserted solely

15

against a third-party not named in the original complaint should be dismissed even when there is another counterclaim asserted against both the original plaintiff and the third-party. See JAH IP Holdings, LLC v. Della Parola Holding Co., LLC, No. 13-CV-02195-MSK-KLM, 2014 WL 4375932 at *3-4 (D. Colo. Sept. 4, 2014)(ruling that the counterclaims asserted against the plaintiff and a third-party jointly were permissible under Rule 13, but that the one counterclaim asserted against the third-party alone was impermissible); CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione, No. CIV.A. 10-4505, 2011 WL 3268386, at *3 (E.D. La. July 28, 2011)(allowing a counterclaim asserted against the plaintiff and third-parties to proceed but dismissing three counterclaims asserted only against the third-parties because "[a] counterclaim may not be directed 'solely against persons who are not already parties to the original action'" (citation omitted)).

But at least one district court in this circuit has found that counterclaims asserted against a third-party alone are procedurally proper so long as there is another counterclaim asserted against both that third-party and an original party to the case. See So. Beach Hotel, LLC v. Molko, No. 09-21393-CIV, 2009 WL 10667895, at *4 (S.D. Fla. Oct. 14, 2009). In

Molko, the district court allowed the defendants to assert both counterclaims against the third-parties and the plaintiff jointly and counterclaims against the third-parties alone. Id. In doing so, the court rejected the argument that "any individual counterclaim being brought against a newly joined party must also be brought against a party already in the case" under this circumstance. Id.

The Court is persuaded by Molko. Allowing Crystal Clear to assert counterclaims against both Solar City and Independent Savings "gives effect to the purpose behind the joinder rules: preserving judicial economy through the adjudication of related claims in one lawsuit." Id. at *5. Furthermore, the breach of the Merchant Agreement and breach of the implied covenant of good faith and fair dealing counterclaims are closely tied to the civil conspiracy counterclaim asserted jointly against Solar City and Independent Savings. Crystal Clear alleges that Independent Savings' motivation for imposing improper charge-backs — the basis of the breach of the Merchant Agreement and breach of the implied covenant of good faith and fair dealing counterclaims – was its participation in the alleged civil conspiracy with Solar City to retaliate against Crystal

17

Clear's owner. Adjudicating these three counterclaims together is a better use of judicial resources.

Thus, the Court finds it permissible for Crystal Clear to assert the counterclaims for breach of the Merchant Agreement and breach of the implied covenant of good faith and fair dealing against Independent Savings because Crystal Clear has also asserted a claim for civil conspiracy against both Independent Savings and Solar City. The Court, therefore, denies the Motion and will not dismiss the counterclaims against Independent Savings.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

Counterclaim-Defendant The Independent Savings Plan Company's Motion to Dismiss Claims (Doc. # 32) is **DENIED**. Independent Savings' answer to the counterclaim is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of January, 2020.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE